IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

In re: )
)
Oscar O. Ford and )
Fonda B. Ford, ) Case No.: 05-44133-BGC-13
)
      Debtors. )

**Order Granting Relief from the Stay**

     The matter before the Court is a <u>Motion for Relief from Stay</u> filed by Ralph D. Gaines on October 27, 2005. A hearing was held on November 30, 2005. Appearing in person were Ralph Gaines, the movant, and Robert Austin, his attorney. Appearing by telephone were Oscar Ford, the debtor, and Sandra Campbell, his attorney. The matter was submitted on the testimony of Mr. Gaines and Mr. Ford, exhibits, pleadings, arguments, and the records of the Court and the Chapter 13 trustee.

**I. Background**

     The debtor and his father purchased certain commercial real estate in Alexander City, Alabama on November 14, 2002. Pinkerton Financial Corporation financed that purchase. On the same day, Pinkerton assigned its interest to the movant. The movant now holds the note and mortgage associated with the purchase.

     After the debtor became in arrears on his mortgage payments, he filed the pending Chapter 13 case on October 13, 2005. The movant filed the pending <u>Motion for Relief from Stay</u> on October 27, 2005.

**II. Contentions**

     The movant contends that the current past due amount from the debtor is $16,997.78, as of October 31, 2005. When the petition was filed the arrearage amount was $16,002.92, (two payments have come due since the petition was filed). This amount includes actual arrears of $10,514.20, late fees of $988.72, insurance paid by the movant of $1,500, and an attorney fee of $3,000. The movant further contends that value of the collateral at the time of the purchase was $72,500 and that the payoff balance now is $70,000.

     The debtor contends that he made his November 2005 payment, based on copies of money orders he has totaling $600 and made out to the movant. He contends that those were mailed to the movant. The movant contends, as of the date of the hearing, that he did not receive those funds and that the debtor has not made a

payment since the case was filed. The debtor offered copies of the money orders as exhibits but the facsimile version of those exhibits were not readable.

The movant offered copies of the parties' note (Movant's Exhibit 1) and mortgage (Movant's Exhibit 2) and the assignment (Movant's Exhibit 3) of those interest to him from Pinkerton. There were no objections and those were admitted.

### III.  Findings of Fact

### A.  Mr. Gaines' Testimony

Mr. Gaines testified that he is the holder of a note and mortgage for certain real estate being purchased by the debtor and the debtor's father. That note and mortgage were assigned to him by Pinkerton Financial Corporation, the original lender, on November 14, 2002, the date of the purchase and financing. The movant recorded his assignment in the probate court for Tallapoosa County, Alabama.

The movant testified that the note and mortgage were not current. The payoff amount as of October 31, 2005, was $69,997.78. The payoff amount includes, as of October 31, 2005, arrears of $16,002.92. That amount is made up of payments of $10,514.20, late fees of $988.72 late fees, $1,500 insurance the movant paid (after the property was uninsured for several months), and $3,000 attorney fees.

He testified further that since the bankruptcy was filed on October 13, 2005, both the October 14, 2005, and November 2005, payments have become due, but neither was paid. He also testified that he has not received a mortgage payment since May 2005.

When the property was assigned to the movant, as of July 2, 2002, it was appraised for $72,500. There has not been a subsequent appraisal.

### B.  Mr. Ford's Testimony

The debtor testified that he had made his November 14, 2005, mortgage payment and that he intended to make his December 14, 2005, payment. He testified that a letter <u>was</u> mailed on November 18 or 19 to the movant. He testified that the letter contained his November 14, 2005, mortgage payment. The letter was not returned to him and the envelope <u>did</u> contain a "return address." The payment was comprised of two money orders totaling $600.

On cross examination the debtor acknowledged that he did not have any personal knowledge of whether the payments were actually mailed or how they were mailed.

He had testified on direct examination that two money orders were mailed, one for $500 and one for $100. He explained that the payee's name, Mr. Gaines, would have been added after the orders were purchased, as is the custom.

On cross examination he testified that he was in New Jersey at the time that the money orders were supposed to have been mailed. He said he left his daughter instructions, including the address of the movant. He left $600 at his residence and instructed her to mail the payments. He did not mail them himself, and he could not testify that his daughter mailed them or if she did, that she put a return address on the envelope. The debtor did not explain who purchased the money orders, that is whether he left $600 with his daughter, or whether he purchased them and left them with his daughter.

On direct examination, the debtor testified about the use of the property. He testified that his father used the property for a self service laundry. It had been used as such previously so he and his father believed that it could be used similarly again. They had machines delivered in January 2004 but were not able to operate the business. The property was inspected and apparently did not meet certain Code requirements. They had to make changes to the electrical system, plumbing, the layout, the bathroom, the water fountain, and other physical changes.

They opened the business in August 2004, some seven to eight months later. During that time they had normal business expenses including the mortgage payment on the property and lease payments on the machines. They had to pay for operating the business but did not have any income. During this time they spent about $26,000 to $27,000.

The debtor testified about his future plans for the laundry business. His brother, who works as a financial analyst for the Center for Disease Control in Atlanta, plans to retire in March 2006 or April 2006, to move to Alexander City, and to get the laundry back functioning and producing revenue. His brother may also use his own credit to refinance the note on the property with the SBA and pay the amount owed to the movant.

On cross examination the debtor testified that some of the machines had been repossessed because the lease payments had not been made. The business is not being operated at this time and will not be in the near future. The last time it was operated was August 2005. There has not been any income for the last three months. The business is not open now.

He is not paying for insurance at this time as he is relying on the insurance obtained by the movant. He testified that when the movant's insurance lapses, he will obtain insurance for the property. The movant's fact summary sheet indicates that the property is insured through April 12, 2006, with Lloyds of London.

3

On cross examination, the debtor explained his interest in the property. While he is on the note and mortgage, he is not on the deed. The deed is in his father's name. He invested in the property, and his father understands that he has an interest in the property.

In addition to the laundry, the debtor has another business. It is a retail business. That business is next door to the laundry.

On his bankruptcy petition, the debtor listed his monthly income from that business as $2,166. He could not substantiate that figure and represented that his income would fluctuate depending on his sales.

On cross examination the debtor testified that the property on which he operated his retail business had been foreclosed a few months earlier. He was supposed to have paid rent for the property (presumably to his father who was represented to be the owner of the property), which rent was to have paid the mortgage payments. He did not pay that rent and the mortgage payments were not made.

The parties agreed that they had an arrangement that $500 per month would be paid on the foreclosed property until it could be refinanced. But neither party explained that arrangement of the parties' agreement.

The debtor explained that he could not make the mortgage payments on the retail business property because of the expenses in starting up the laundry. Those expenses had drained all of his family's income therefore they could not pay the retail business expenses.

On direct examination, the debtor testified that the laundry is a source of income for his family and for him.

The debtor also testified that his father is not able to work at the present because he is required to have regular dialyses treatments.

### C. The Debtor's Chapter 13 Payments

The Chapter 13 trustee's records indicate that the debtor has not made a plan payment in this case. At the hearing on the Motion for Relief on November 30, 2005, when asked whether he had made a plan payment, the debtor represented, "It will be paid this Monday." Unofficial Transcript. The "Monday" he referred to would have been December 5, 2005. The debtor has not made that payment as of the date of this Order.

At the Confirmation hearing held on January 11, 2006, the debtor explained that his wife was ill and that he was planning to make payments soon. He has a job in New Orleans and will be moving there to work. When he is paid he will be able to make payments.

## IV. Conclusions of Law - Relief from Stay

### A. General Rule

A party is entitled to relief from the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code, "for cause, including the lack of adequate protection of an interest in property of such party ...." 11 U.S.C. § 362(d)(1).

A party is also entitled to relief from a stay of an act against property under section 362(d)(2) if the debtor does not have equity in the property and the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2).

### B. Burdens of Proof

In a hearing on a motion for relief from an automatic stay, the party requesting relief has the burden of proof on the issue of the debtor's equity in the property, while the debtor has the burden of proof on all other issues. 11 U.S.C. § 362(g).

### C. Application of Law to the Facts

#### 1. Equity and Necessity for Reorganization under Section 362(d)(2)

##### a. Equity

Based on the movant's uncontroverted testimony, the value of the property is at least $72,500. The debtor did not present testimony regarding value of the property, but on his bankruptcy petition he listed <u>his</u> interest in the property at $60,000.

As of October 31, 2005, the payoff balance is $70,000. Consequently, considering cost of sale, there is no equity in the property.[1]

##### b. Necessary for Reorganization

Section 362(d)(2) of the Bankruptcy Code provides that <u>both</u> subsections (A) and (B) of section 362(d)(2) be satisfied before relief from the stay be granted. A court must find that "the debtor does not have an equity in such property; <u>and</u> such property is not necessary to an effective reorganization." 11 U.S.C. §362(d)(2) (emphasis added).

The only positive, albeit general, evidence on the issue of necessity for reorganization was from the debtor who testified that the property was a source of income for his family and him.

---

[1] The $72,500 appraised value of the property was as of July 2002. There was no evidence that the property value had changed since then, although the debtor listed <u>his</u> interest in the property, (on his bankruptcy petition), as $60,000.

5

The contrary evidence is that the debtor has another business, although that business operates only sporadically. And the debtor is moving to New Orleans soon to work.

Based on the evidence, it would be difficult for the Court to find that the subject property is necessary for the debtor's effective reorganization. The property is not producing income, to the contrary, it has, in the debtor's words been a drain on his family's finances. The debtor has other income from his retail business and will have income from his job in New Orleans.

For the above reasons the Court must find that the property is not necessary for an effective reorganization. It is commercial property that is of no current value to the debtor.

### c. Relief from the Stay Under Section 362(d)

Because the debtor does not have equity in the property and the property is not necessary to an effective reorganization, the movant is entitled to relief from stay under section 362(d)(2). 11 U.S.C. § 362(d)(2).

### 2. Cause, Including a Lack of Adequate Protection under Section 362(d)(1)

### a. Adequate Protection

According to Section 362(d)(1) of the Bankruptcy Code, 11 U.S.C. § 362(d)(1), the court shall grant relief from the stay upon a showing of "cause" including the lack of adequate protection of the movant's interest in the Property.

The secured party's "interest in property which must be adequately protected encompasses the decline in the value of the collateral only, rather than perpetuating the ratio of collateral to debt." Orix Credit Alliance, Inc. v. Delta Resources, Inc. (In re Delta Resources, Inc.), 54 F.3d 722, 730 (11th Cir. 1995), cert. denied, 516 U.S. 980 (1995). The phrase "interest in property" in section 362(d)(1) does not include "the secured party's right (suspended by the stay) to take immediate possession of the defaulted security, and apply it in payment of the debt," United Sav. Assoc. Of Texas v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 370 (1988), but, instead, encompasses "the right of the secured creditor to have the security applied in payment of the debt upon completion of the reorganization;" id., an interest which "is not adequately protected if the security is depreciating during the term of the stay." Id.

There is no evidence that this property is depreciating or will depreciate therefore, the Court finds that the movant is adequately protected. This Court previously stated that "if a debtor has equity in a property sufficient to shield the creditor

6

Case 05-44133-JJR13    Doc 27    Filed 02/02/06    Entered 02/02/06 11:34:54    Desc Main
Document      Page 6 of 8

from either the declining value of the collateral or an increase in the claim from accrual of interest or expenses, then the creditor is adequately protected." In re Mathews, 208 B.R. 506, 510-11 (Bankr. N.D. Ala. 1997) (quoting In re James River Assocs., 148 B.R. 790, 796 (E.D. Va. 1992)).

Based on the above, the Court finds that the movant is not entitled to relief from stay for lack of adequate protection under section 362(d)(1).

### b. Other Cause

Relief from stay may also be granted for "cause" under section 362(d)(1). Because the Code does not define that term, courts are left to determine whether cause exists for granting a relief from stay based on the totality of circumstances in each case. Baldino v. Wilson (In re Wilson), 116 F.3d 87, 90 (3rd Cir.1997); In re Brown, 290 B.R. 415, 423 (Bankr. M.D. Fla. 2003). Legislative history indicates that the "'facts of each request will determine whether relief is appropriate under the circumstances.'" In re Mazzeo, 167 F.3d 139, 142 (2nd Cir. 1999)(quoting H.R.Rep. No. 95-595, at 343-44 (1977), reprinted in 1978 U.S.C.C.A.N. 6300).

The Court should, "consider the policies underlying the Bankruptcy Code as well as the competing interests of the creditor, debtor, and other parties in interest" when exercising its discretion in granting a motion for relief for cause. In re Borbidge, 81 B.R. 332, 335 (Bankr. E.D. Pa. 1998). Thus, cause is an inherently broad and flexible concept, allowing the bankruptcy court to resolve matters based on the unique facts of each situation.

The debtor's plan of reorganization, that is, for his brother, who is a financial analyst, to operate the business or refinance the movant's security interest, is speculative at best. The debtor's brother did not testify and there is no evidence that he has the ability or the means to operate the business.

While the debtor is waiting for his brother, the debtor does not have any income from the laundry. He has little income from his other business and he is leaving home to work elsewhere. It does not appear that the debtor can make the current mortgage payments and because he had not made any Chapter 13 plan payments at the time of confirmation, it does not appear that he can cure the over $16,000 arrears currently owed on the property.

The debtor has not paid for insurance on the property for some time and the current insurance policy expires in April 2006. There is no evidence that he has the ability to pay for insurance on the property, much less pay for other insurance that would be required to operate a business such as a laundry.

The payment the debtor promised to make on the Monday after the hearing on the pending motion was not made on that Monday and has not been made as of the date of this Order.

The only credible evidence on the issue of mortgage payments is that the debtor has not made any such payments since May 2005, including none made since this case was filed. There is no evidence that the debtor has the ability to make these payments or to cure the arrears for payments missed in the past. The business is not being operated and will be only if the debtor's brother is able to either refinance the family's debt or drastically turn the business around.

The debtor's father is ill. His wife is ill. He is leaving home to work in New Orleans. There are many reasons to feel sympathy for the debtor. He has a difficult road ahead. His circumstance cannot however counter the cause that is present to grant relief from the stay. Consequently, the Court finds that relief from the stay is also appropriate under 362(d)(1), for cause. 11 U.S.C. § 362(d)(1).

### V. Order

Based on the above, it is therefore **ORDERED, ADJUDGED and DECREED** that the Motion for Relief from Stay is **GRANTED**.

This order is a written opinion for purposes of the E-Government Act, Pub. L. No. 107-347.

Dated: February 2, 2006 /s/Benjamin Cohen
BENJAMIN COHEN
United States Bankruptcy Judge

8